No.——

**First Circuit**

---

**MADISON PAINT CO. v. POLICE JURY OF EAST FELICIANA PARISH**

---

(April 11, 1928. Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Sales—Par. 17, 18, 116.**

An order, acceptance, and shipment of paint sold according to salesman's price list at customary prices and their market value constituted a contract of sale, which was completed by delivery of the goods to the common carrier.

Appeal from the Parish of East Feliciana. Hon. Charles Kilbourne, Judge.

Action by Madison Paint Company against Police Jury of East Feliciana Parish.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

E. S. Muse of St. Francisville, attorney for plaintiff, appellant.

Jos. L. Golson, District Attorney of St. Francisville, for defendant, appellee.

MOUTON, J.  In January, 1926, Walter Manley, salesman for plaintiff company, had a conference with W. E. Woodward, president of the Police Jury of defendant parish, in reference to the sale of paint which was to be used on the courthouse at Clinton, La.

The following quotations in writing of the prices for paint, were left by Manley, the salesman, with Woodward, viz:

Madeliska Green_____$1.60 per gallon
Battleship Gray_____$1.25 per gallon
Mill White flat_____$1.35 per gallon

This is shown by the testimony of Manley, Woodward, and by letters written to plaintiff company, by the latter.

In that conference in reference to these three qualities of paint, Woodward made no selection. In his testimony he says, he told Manley he would not give him an order on that day, but that he expected to give his order the week after, and asked if he should give it in Manley's name, or from the house. He was instructed to order direct from the house, he testifies. It is obvious that no sale had been effected at this conference, as Woodward had made no selection of the kind of paint he wanted, or as to what quantity. Evidently, this had been left for future determination. The defendant parish, under this arrangement, was a mere prospective purchaser.

On Jan. 12, 1926, Woodward wrote to plaintiff company the following letter:

"Dear Sirs:
"Your man Manley was in to see me some days ago, and I have concluded to try your paint on our courthouse, so please send me as per agreement one bbl. (60 gal.) of white oil paint, and 60 gal. of white cement paint, and two steel brushes.
"I am going to use the cement paint on repairing our brick structure, so send me the best you have; make payable in 60 or 90 days with discount and oblige.
"For acct. East Feliciana Parish,
"(Signed) W. E. Woodward,
"Prest. Police Jury."

After securing the order, plaintiff company on January 15, 1926, wired Woodward asking that he wire at its expense if the white oil paint and cement paint were intended for interior or exterior use. Woodward on the 16th, the day following the reception of the telegram, wired back that it was all for outside work.

Plaintiff company shipped the paint and cement Woodward had ordered as per his letter and telegram. Woodward refused to accept delivery of the shipment claiming that the prices charged for the articles shipped were nearly double in amount of the prices which had been agreed upon between him and Manley. After refusing the shipment, Woodward wrote plaintiff company, on Jan. 25, 1926, that its charges were excessive, and saying that the order he had given was based on the prices and quotations of Manley which were as follows:

Madeliska Green_____$1.60 per gallon
Battleship Gray_____$1.25 per gallon
Mill White flat_____$1.35 per gallon

This is the quotation in writing to which we have hereinabove referred, and as to which we took occasion to say there had been no sale, as Woodward was to order the paint direct from the house, the week after, if he decided so to do. Even if it is possible to concede that an agreement for the sale had been entered into, in reference to the paint above mentioned, it is manifest that Woodward, in his order which was accepted by plaintiff's telegram, made no allusion whatever to the prices as to Madeliska Green, Battleship Gray, or Mill White flat, which was to be ordered

direct from the house, if Woodward so directed. The order made no mention of the quality of paint, and the prices as appeared in the written quotation. The order says:

"Send me as 'per agreement one bbl. (60 gal.) of white oil paint and 60 gal. of white cement paint."

The articles so ordered were entirely different from those listed in the quotation, and constituted a contract altogether distinct and independent of the considerations which had prompted Manley in leaving the written quotation as a guide to Woodward, should the latter decide to order the paint therein listed. It is true that the order says: "Send me as per agreement * * * white oil paint * * * and white cement paint." In commenting on the words "as per agreement" so used in the order, the judge of the lower court in his reasons for judgment says:

"Plaintiff was put on its guard by Woodward's reference to the agreement, and if it shipped the paint without information on that point, it did so at its own risks."

It must be observed that after the words "as per agreement" the order reads: "One bbl. (60 gal.) of white oil paint and 60 gal. of white cement paint." Now as a matter of fact there was no agreement between Woodward and Manley in reference to any white oil paint or white cement paint. The fact is, that in the written quotation which was left in the possession of Woodward for his guidance there is no mention or reference in the slightest degree to any white oil paint or white cement

paint, and it is on this quotation list that Woodward says in his letter of Jan. 25, 1926, that he based his order. Hence, we are constrained to differ with our learned brother of the District Court as to his conclusion that plaintiff should have been put on its guard by Woodward's reference to an agreement, as there had been no agreement on the subject matter to which Woodward refers in his order. The record therefore shows that the shipment of the white oil paint and the white cement paint was made by the plaintiff company to defendant under its order of Jan. 12, 1926, according to the salesman's price list of plaintiff company and which were sold at customary prices and at their market value. The order, acceptance, and shipment constituted a contract of sale, which was completed by delivery of the goods to the common carrier. Court of Appeal Reports, Vol. 5, page 20; Page and Hill Co. vs. Shreveport Eldorado Pipe Line Co. (Second Circuit); Vol. 1, p. 692, Morotock Mfg. Co. vs. Britt & Norris (Second Circuit). Here they were refused at point of delivery. The defendant parish is liable for the amount claimed, and the judgment rejecting the demand must be reversed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed; it is further ordered and decreed that plaintiff have judgment against defendant in the sum of three hundred and seventy-three and 35-100 dollars ($373.35) with five per cent per annum interest thereon from the 20th day of March, 1926, until paid, with all costs of suit.